In examining this question, we must suppose the Circuit Court to have acted correctly in the prior stages; and to have given to the jury, the *Page 105 
necessary instruction; as no exceptions seem to have been taken, in any regular mode, to these proceedings.
Under our system I am inclined at present to the belief that this Court possesses the power to revise the opinion of the Circuit Court, either in granting or refusing a new trial; but still I must declare it as my opinion that it is a power that ought most cautiously to be used, and never exercised but in a very clear case.
With these impressions I proceed to the investigation of the points which have been deemed worthy of examination here.
To support the action against Kelton two points were necessary to be established upon the trial.
1. That there was no probable cause for the prosecution which he commenced and carried on to an unsuccessful termination against Bevins.
2. That malice, and not the public good, was the motive which induced him to commence the prosecution Upon the trial, if it clearly appeared that there was no probable cause for the prosecution, the jury were authorized to infer malice in the prosecutor; but from malice being proved they could not infer a want of probable cause. It must on all sides be conceded that the evidence disclosed circumstances from which malice could be collected.
The difficulty here is to find the evidence from which a want of probable cause could be inferred.
Upon this point it must be yielded there is no direct proof, but still I think there are some circumstances from which such an inference could be deduced. Bevins, it will be remarked, must be now considered as innocent of the crime charged against him by Kelton.
The only question then to be ascertained is whether Kelton, when he carried on the prosecution, had good cause to think Bevins was guilty?
The testimony shows that when Bevins found the steer dead in the woods he skinned him, carried the skin home, hung it up in a public place near his house, mentioned it to the neighbors, and requested them *Page 106 
to make it public in the neighborhood, that the owner might be discovered. Bevins lived in a place as public as most places in the neighborhood; Kelton lived in the same neighborhood, and before the prosecution there was an attempt to arbitrate the matter respecting the steer. Now, if we once admit that Kelton knew the same things respecting this matter, which almost every other man in the neighborhood seemed well acquainted with, it would clearly follow that this was a causeless prosecution. As Kelton seems to have found the steer dead, it is very natural to suppose that he would be making inquiries, and, if making them, would he not likely get the same information which others obtained?
Farther; is it not reasonable to suppose that when the arbitration was going on, and each party trying to put his own case in such a situation as to procure a favorable award, Kelton would be apprised of the manner in which the hide was obtained by Bevins, and the manner in which he had conducted himself respecting it? If he did, it is reasonable to infer that he must have known Bevins was innocent of the theft afterwards charged upon him. If with this knowledge he commenced the prosecution, he surely commenced it without having any reasonable ground upon which to believe Bevins guilty; in other words, without any probable cause. I can not tell what effect those circumstances had on the minds of the jurors. I am free to admit that there is strong testimony given by Kelton upon this point; but still I can not say there was no proof of a want of probable cause, and unless I could be fully persuaded that there was no circumstance that would authorize the inference which they must have drawn, I could not consent to reverse the Circuit Court's opinion on this point. If this were an ordinary case I could be more easily induced to act in it; but here have been three verdicts, by three different juries, in three different courts on the same side of this question, two of those verdicts meeting, as far as I can see, the approbation of the courts in which they were rendered. The case, then, stands much more strongly fortified against a reversal than an ordinary *Page 107 
case would do. In any case it will be extremely difficult for this Court to have the same clear and full view of a question, respecting the granting a new trial, as that Court who have seen the witnesses, heard them deliver their testimony, and carefully watched over the trial.
But it has been sometimes said that cases of this kind stand on a different ground, and that the Court has more control over them than it has over common cases, because it is said in the books that want of probable cause is a question of law which the Court must decide. How this idea first started, and to what uses it was to be applied, it is not material at present to examine. I can not see how it can with us be of any practical benefit. Our Constitution hinders the judges from charging the jury as to the matter of fact; they are only authorized to state the testimony and declare the law. Whenever, therefore, an action of this kind is commenced, and the plea of not guilty pleaded, the jury are to try the question of probable cause; and it is a question then compounded of law and fact. The jury are to decide it as any other question, under the direction of the Court, as to the law. They judge of the facts for themselves, and receive the law from the Court. This is the case in every other cause. In this case, what could the Court do when the cause was on trial? They might arrange the testimony in the way they thought correct, and tell the jury what the law arising upon those facts was; so they may in every other case; but still the jury might believe a witness whom the Court did not credit, or it might understand the facts entirely different from the way the Court understood them; and in this respect the Court has no power to direct how they shall understand them. The jury acts according to its own understanding on these points in every case.
The Court might with propriety say to the jury; that if they were satisfied from the proof that Kelton had probable cause to believe, when he commenced the prosecution, that Bevins had committed the larceny, they ought to find for Kelton, notwithstanding *Page 108 
Bevins was clearly innocent; on the contrary, if the jury were clearly satisfied that Bevins was innocent, and that Kelton, as a reasonable man, must have believed so, then to find for Bevins. But neither in this nor any other case are our courts at liberty to tell the jury that they must believe the testimony establishes this or that fact. Probable cause may sometimes be a question of law to be determined by the Court. When the defendant pleads the circumstances which he alleges rendered: the plaintiff's guilt probable, if the plaintiff demurs to such plea, it is then a question of law for the exclusive determination of the Court. So, if the Court before whom the indictment was tried were applied to for a copy of the record, they might then express their opinion upon this point; but when the suit is commenced, and the issue of guilty or not guilty submitted to the jury, as in every other case, probable cause must be finally determined by the jury, under the direction of the Court as to the law.
How would this matter ever be determined if this were not the case? The Court charge the jury upon the law, and they find for the plaintiff; their verdict is set aside because this is a question of law; a second trial is had, and the same result. In this, as in every other case, the verdict of the jury must settle the matter, or it must remain forever undetermined; but this is always expected from a jury, and such is certainly their duty that they will take the law was stated by the Court.
The very submitting the question to, a jury is with me full proof that it must then be viewed as a question compounded of fact and law. If not, why submit it to them? Why call upon them for an opinion upon oath if it be a matter with which they have no concern? If it is a naked question of law, I can see no use in submitting it to them. Let the Court at once take this part of the issue to themselves, and let the jury determine upon the malice. In my opinion the mode of conducting the cause and making the defence must make this a question of law or not, dependent upon *Page 109 
the question whether matter arises of which the Court has the entire management.
We have each examined this cause with the utmost solicitude, desirous of ascertaining what is right respecting it. We are unable to see it in the same point of view; and nothing remains but for each to give the opinion he really entertains. I am sorry to be compelled to close this matter between the parties, under circumstances which make me much distrust the correctness of my own opinion; but thinking as I do, I can not do other than say that where I am not convinced I will not act. I am not sure this judgment is wrong, and therefore will not reverse it.
NOTE. — This case is also cited in 2 Y., 332, and 3 Y., 295. — ED.